## VINCENT COMPANY, n/k/a H.V. Collins Company

v.

## FIRST NATIONAL SUPERMARKETS, INC., et al.

### No. 95–415 Appeal.

Supreme Court of Rhode Island.

Oct. 21, 1996.

Robert A. Pitassi, Mary Beth Furia, Providence, for Plaintiff.

Bruce Wolpert, Providence, Jeffrey Lanphear, Cranston, for Defendant.

### OPINION

**PER CURIAM.**

This matter came before us on September 25, 1996, pursuant to an order directing the plaintiff to appear and show cause why the issues raised in this appeal should not be summarily decided. The plaintiff, Vincent Company, n/k/a H.V. Collins Company (Collins), appeals from a declaratory judgment entered in the Superior Court for the defendants, First National Supermarkets, Inc. (First National), and Roger Williams Foods, Inc. (Roger Williams). After hearing the arguments of counsel and examining the memoranda filed by the parties, we conclude that cause has not been shown and that the appeal should be decided at this time.

Collins's claim arises out of a September 18, 1963 agreement between First National and Forest–Pleasant Realty Trust (Forest–Pleasant) to enter into a Prime Lease and Separate Rent Agreement for a supermarket located in Attleboro, Massachusetts. Forest–Pleasant was the original lessor, with the Vincent Company, and ultimately Collins, succeeding to the lessor's interest in the property.

The prime lease established a fifteen-year term with options that could extend the rental period to forty-five years. The separate rent agreement, which was subject to the prime lease, obligated First National to pay a minimum annual rent of $28,930 and a percentage payment equal to 1 percent of gross sales that exceeded $1,930,000 in a one-year period.

Occupying the premises from June 1, 1964, to July 26, 1980, First National made all the

required rental and percentage payments through December 31, 1979. It also delivered a Statement of Gross Sales through December 31, 1981, as mandated by the separate rent agreement.

On January 23, 1981, First National and Roger Williams executed a sublease agreement. Under the terms of the agreement, Roger Williams was required to pay First National a minimum rent of $65,177.98 per year and a percentage rent equal to 1 percent of the amount of gross sales that exceeded $3,258,899 in a one-year period. The sublease agreement also provided that First National would remain responsible for the minimum and the percentage-rent obligations owed to Collins.

On June 15, 1982, First National and Roger Williams amended the sublease agreement to reflect the terms of the prime lease. There Roger Williams assumed the obligations concerning the minimum and the percentage rent owed to Collins under the prime lease.

After entering into the sublease agreement, First National failed to transmit the Statement of Gross Sales to Collins for the calendar year ending December 31, 1982, or for any calendar year thereafter. Upon inquiry by Collins on April 28, 1983, First National indicated in a letter dated May 4, 1983, that it would no longer provide Collins with the statement. Accordingly First National contended that the third-party sublease contingency in section 18 of the separate rent agreement had been triggered by the First National/Roger Williams sublease, thereby terminating First National's obligation to pay any further percentage rent.

Collins responded by filing a declaratory-judgment action in Superior Court challenging First National's interpretation of section 18. *See* G.L.1956 §§ 9–30–1 to 9–30–3. After concluding that the provisions of section 18 were clear and unambiguous and that the sublease agreement between First National and Roger Williams terminated the obligation of either party to pay any further percentage rent to Collins, a Superior Court justice entered judgment for First National and Roger Williams. Collins then appealed the judgment to this court.

"[T]he decision to grant a remedy under the Declaratory Judgment Act is purely discretionary. '[A] decision made in the exercise of [that] * * * power should not be disturbed unless it clearly appears that such discretion has been improperly exercised or that there has been an abuse thereof.'" *Lombardi v. Goodyear Loan Co.*, 549 A.2d 1025, 1027 (R.I.1988) (citation omitted). We believe that the sublease agreement entered into by First National and Roger Williams ended the obligation of either party to pay the percentage rent to Collins, and thus there was no abuse of discretion below. Since the parties agree that Massachusetts law applies, this court will interpret the contract under the laws of that commonwealth.

Section 18 of the separate rent agreement expressly provides for the termination of the percentage rent upon the occurrence of any one of three separate events. The section reads:

"Notwithstanding anything to the contrary herein contained or contained in the lease of which this Separate Rent Agreement is a part, percentage rent provisions herein contained shall not be in force or applicable *in the event Lessee [First National] shall assign this lease or sub-let the demised premises to other than a wholly-owned subsidiary or successor corporation or in the event Lessee [First National] ceases to operate or carry on its business in said demised premises, or in the event that the said premises cease to be operated as a supermarket or for supermarket purposes.* In any such event, the only sums payable under this [S]eparate Rent Agreement and the lease of which it is a part shall be the so-called minimum rent and also, if any are payable, increase in taxes and maintenance charges, all as set forth in this Separate Rent Agreement." (Emphasis added.)

The first event specified in section 18 occurred when First National sublet the premises to Roger Williams, a corporation that was neither a wholly owned subsidiary nor a successor corporation of First National. In addition, the second event also occurred since First National ceased to operate its business

on the premises as a result of the sublease agreement. Collins argues that the three events enumerated in section 18 contradict and overlap one another and that as such the provision is inherently ambiguous. He invites us to read section 18 in light of the entire lease and to conclude that the lease as a whole contemplated the payment of a percentage rent if the premises were used as a supermarket. We decline to do so because the plain language of section 18 prevents us from overlooking or contradicting its terms.

 It has long been held that "parties are bound by the plain terms of their contract." *Hiller v. Submarine Signal Co.*, 325 Mass. 546, 550, 91 N.E.2d 667, 669 (1950). A court may look to the surrounding circumstances of contract formation to determine the parties' intended meaning of the words in a contract only when such words are ambiguous and open to more than one interpretation. *Golden v. Popper Shoe Corp.*, 94 F.Supp. 100, 102 (D.Mass.1950) (applying Massachusetts law). When a contract is unambiguous, however, the intent of the parties becomes irrelevant. *Fairfield 274–278 Clarendon Trust v. Dwek*, 970 F.2d 990, 994 (1st Cir.1992) (applying Massachusetts law). In the instant case we need not examine the intent of the parties since the language of section 18 is clear, unambiguous, and open to only one reasonable interpretation.

Section 18 lists three separate contingencies. If any one of these contingencies occurs, the percentage-rental provision of the lease terminates. The independence of each of these contingencies is evidenced by the parties' use of the word "or" to separate the contingencies. The disjunctive "or" is "used to express an alternative or to give a choice of one among two or more things." Black's Law Dictionary 1095 (6th ed. 1990). Thus, the occurrence of any one of these events terminates First National's obligation to pay the percentage rent. Moreover, the fact that two of the three events may occur simultaneously does not render section 18 ambiguous or contradictory. The triggering mechanism is the occurrence of at least one of the events. The sublease agreement entered into between First National and Roger

Williams qualified under two of the three contingencies. Thus First National and Roger Williams were thereby relieved of any further obligation to pay the percentage rent.

For the foregoing reasons Collins's appeal is denied and dismissed, and the declaratory judgment appealed from is affirmed. The papers of the case are remanded to the Superior Court.

WEISBERGER, C.J., and MURRAY, J., not participating.