DECISION
Before this Court is the complaint for declaratory judgment submitted by Plaintiffs William Norman Wood Prince of Chicago, Illinois and Frederick H. Prince, IV of Washington, D.C., in their capacities as Trustees under the Deed of Trust dated June 3, 1932. Defendants Barbara Eleanor Collins, Wendy Catherine Sherman, Nell July Wood-Prince, Pearl Dryden Wood-Prince, Frederick Prince IV, Frederick Horatio Octavius Prince and Cynthia Elizabeth Prince have filed answers, praying for entry of judgment on the Plaintiffs' action. Additionally, Defendants Barbara Eleanor Collins and Wendy Catherine Sherman have timely filed a memorandum of law in support of declaratory judgment for a traditional per stirpes distribution.[1]
 Facts/Travel
On June 3, 1932, in Providence, Rhode Island, Frederick Henry Prince (Decedent) delivered to himself and his wife, Abbie Norman Prince, as trustees, an irrevocable deed of trust dated June 3, 1932 (the 1932 Trust) creating an irrevocable trust to continue until 21 years after the death of ten persons then living (including the Decedent). All of the named ten persons have died. The last of the named persons to die was William (Henry) Wood Prince, who died on January 22, 1998. Thus, the 1932 Trust will terminate on January 22, 2019. The Decedent transferred to the trustees of the 1932 Trust all of the capital stock of F.H. Prince 
Co. Inc. . Currently, Plaintiffs William Norman Wood Prince and Frederick H. Prince IV are the duly appointed and presently acting trustees (the Trustees) of the 1932 Trust.
Article II, section 1, paragraph (j), subdivision (I) (hereinafter referred to as (j)(I)) of the 1932 Trust provides as follows:
 "The trustees shall divide one-third thereof (up to but not exceeding Seventy-five Thousand Dollars ($75,000) in any one year) into three equal shares, and shall pay over one each of said shares, per stirpes, to and among the female children and more remote female issue living at the time of such payment, of each Frederick Henry Prince, 3d, Bernard Henry-Wood, 3d, and William Henry-Wood; PROVIDED, that any of said shares of net income which shall fail to be disposed of under this subdivision I shall be added to the other or others of said shares and follow the destination thereof."
Under a series of family settlement agreements and related court orders, from 1975-76 and 1988, the amount of net income distributed annually pursuant to paragraph (j)(I) was increased to $300,000 per year. (Trustee's Mem. of Law at 3). One of the individuals named in that paragraph, Bernard Henry-Wood, is deceased and left no issue. Therefore, under the "failure" clause of the above provision, the share originally designated for his female children or more remote female issue has been divided between the other two shares. (Def.'s Mem. of Law at 2-3). Thus, $150,000 is available for each of the Prince and Wood Prince family lines. (Trustee's Mem. of Law at 3).
On March 29, 2002, the Trustees filed a complaint for declaratory judgment, requesting this Court to enter a judgment construing paragraph (j)(I) and declaring the amount of annual income under paragraph (j)(I) to be distributed by the Trustees to the then-existing three female issue entitled to receive payment, specifically, Barbara Eleanor Collins, Wendy Catherine Sherman, and Nell July Wood-Prince.[2] [3]
Defendants Barbara Eleanor Collins, Wendy Catherine Sherman, Nell July Wood-Prince, Frederick Prince IV, Frederick Horatio Octavius Prince and Cynthia Elizabeth Prince filed answers, praying for entry of judgment construing paragraph (j)(I) under a traditional per stirpes analysis.
On December 6, 2002, Trustees filed an amended complaint to reflect the birth of Pearl Dryden Wood-Prince, a sister to Nell July Wood-Prince, a great granddaughter to William Wood-Prince, and the fourth female issue in existence entitled to receive payment under paragraph (j)(I).
Pearl Dryden Wood-Prince filed an answer, requesting that judgment enter construing paragraph (j)(I) under a traditional per stirpes analysis.
The Trustees brought this action requesting a determination by this Court as to the interpretation of paragraph (j)(I). In the amended complaint, the Trustees aver that paragraph (j)(I) is ambiguous in that Trustees cannot determine the amount of annual income distributions to which Nell July Wood-Prince, Barbara Eleanor Collins, and Wendy Catherine Sherman are entitled for the years 2000 and 2001.[4] The Trustees contend that the language of paragraph (j)(I) could be interpreted in two mutually exclusive ways. First, argue the Trustees, under a traditional per stirpes analysis of paragraph (j)(I), Nell July Wood-Prince would be entitled to $75,000 for each of 2000 and 2001, and the shares of Barbara Eleanor Collins and Wendy Catherine Sherman would be in the amount of $37,500 each.. Alternatively, maintain the Trustees, if paragraph (j)(I) represents a multi-generational class gift, Nell July Wood-Prince, Barbara Eleanor Collins and Wendy Catherine Sherman would share the $150,000 amount for the female descendants of William Henry Wood-Prince equally, such that each would receive $50,000 for the years 2000 and 2001. The Trustees filed a memorandum of law in support of their amended complaint, articulating to the Court the nature of the ambiguity of paragraph (j)(I), as well as the two competing methods of construction. The Trustees, however, do not urge this Court to adopt one method more than the other.
Defendants Barbara Eleanor Collins and Wendy Catherine Sherman, on the other hand, strenuously argue that this Court should construe the trust provision at issue so as to require a traditional per stirpes distribution. In support of this contention, the Defendants rely on the Restatement 2d of Property, Rhode Island case law, and a Rhode Island statute that codified a Rhode Island Supreme Court case, interpreting a will provision to require a per stirpes distribution. Accordingly, the Defendants argue that the words in paragraph (j)(I), "per stirpes, to and among the female children and more remote female issue living", means a traditional per stirpes distribution is required and the division into per stirpes shares begins at the first generation below the designated person.
 Standard of Review
Under the Uniform Declaratory Judgments Act, this Court has the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. G.L. 1956 § 9-30-1. "This Court may also grant further affirmative relief based on the declaratory judgment `whenever necessary or proper' provided subsequent `supplementary proceedings' are brought pursuant thereto." CapitalProperties, Inc. v. State, 749 A.2d 1069, 1080 (R.I. 1999) (citing Sousav. Langlois, 196 A.2d 838 (R.I. 1964)). The purpose of declaratory judgment actions is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations."Providence Teachers Union v. Napolitano, 690 A.2d 855 (R.I. 1997). Seealso Firemen's Fund Insurance Co. v. E.W. Burman, Inc., 391 A.2d 99
(R.I. 1978) ("[t]he obvious purpose of the Uniform Declaratory Judgment[s] Act is to facilitate the termination of controversies"). The Rhode Island Supreme Court has consistently held that "[t]he decision to grant or to deny declaratory relief under the Uniform Declaratory Judgments Act is purely discretionary." Rhode Island Orthopedic Societyv. Blue Cross Blue Shield of Rhode Island, 748 A.2d 1287, 1289 (R.I. 2000) (citing Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997)).See also Woonsocket Teachers' Guild Local Union 951, AFT v. WoonsocketSchool Committee, 694 A.2d 727, 729 (R.I. 1997); Vincent Co. v. FirstNat'l Supermarkets, Inc., 683 A.2d 361, 362 (R.I. 1996); Lombardi v.Goodyear Loan Co., 549 A.2d 1025, 1027 (R.I. 1988). The procedure for obtaining a declaratory judgment authorized by statute is governed by Super. R.Civ.P. 57.
 Per Stirpes or Per Capita?
The Rhode Island Supreme Court has defined the term "per stirpes" as meaning "[b]y or according to stock or root; by right of representation. When descendants take by representation of their parent, they are said to take per stirpes; that is, children take among them the share which their parent would have taken, if living." Petition of Gee, 44 R.I. 132, 135,115 A. 716, 717 (1922). The Defendants maintain that paragraph (j)(I) should be construed so as to require a traditional per stirpes distribution. In support of this position, the Defendants advance a number of arguments. To begin with, the Defendants refer this Court to a prior decision by the Rhode Island Supreme Court which, in 1981, construed this very trust provision. Prince v. Roberts, 436 A.2d 1078 (R.I. 1981). In Roberts, the Supreme Court held that the Settlor's intent was a class gift in which the beneficiaries may be members of different generations; the Settlor's intent was that more remote female issue are entitled to share in their own right and such right was not contingent on any entitlement of a father; and "per stirpes" revealed the intent of the Settlor that children of a living parent who is receiving (j)(I) income are not entitled to receive a share of income during the lifetime of their mother. Id. The Defendants argue that while the Roberts Court did not make a specific finding as to whether or not a traditional per stirpes distribution should be applied, that these principles articulated by the Roberts Court gave every implication that it meant a traditional per stirpes distribution rather than a per capita distribution.
The Defendants also argue that the Rhode Island Supreme Court has defined language in a will, similar to the language in the trust instrument at issue, to mean that a traditional per stirpes distribution is required. Rhode Island Hospital Trust v. Bridgham, 42 R.I. 161
(1919). In Bridgham, the will provided for a bequest of the remainder of the estate "in fee simple, absolutely and forever, to my brother, Joseph Bridgham, and his issue." Id. at 162. The court construed the provision to require that the gift "passed to the descendants of Joseph living at the death of the testator per stirpes and not per capita." Id. at 174. The Defendants argue that the holding in Bridgham compels a holding in the instant matter that a traditional per stirpes distribution is required.
In further support of their argument, the Defendants point out that following Bridgham, the Rhode Island General Assembly saw fit to codify the holding in R.I. Gen. Laws § 33-6-9. This statute provides that
 "Whenever a devise or bequest is made to one for life and thereafter to his or her issue in any will hereafter made, issue shall be construed to be the children of the life tenant living at his or her death, and the lineal descendants of those children as may have died, as tenants in common, but the descendants of any deceased child taking equally amongst them the share only which their deceased parent, if then living, would have taken."
The Defendants assert that, as applied to the Prince Trust, the female issue of the first generation take per stirpes.
The Defendants buttress their argument with reference to the Restatement 2d of Property (Donative Transfers). In particular, the Defendants refer to Section 28.3 of the Restatement which provides (in the absence of clear language requiring stirpetal division):
 "If a gift is made to a class described as the `issue' or `descendants' of a designated person, or by a similar multi-generational class gift term, in the absence of additional language or circumstances that indicate otherwise,
 (1) A class member must survive to the date of the distribution in order to share in the gift; and
 (2) such class member in order to share in the gift must have no living ancestor who is a class member; and
 (3) the initial division into shares will be on the basis of the class members, whether alive or deceased, in the first generation below the designated person."
Restatement 2d Property (Donative Transfers) § 28.2 (1988). The Defendants go on to analogize the language in the Restatement with the language in paragraph (j)(I). Under the Restatement then, assert the Defendants, this Court is required to find that in the instant matter, the three children of the settlor are entitled to one-third of the Wood-Prince share of income under paragraph (j)(I), with representation of the three occurring per stirpes until a qualified female issue could take the share.
In undertaking to construe the language of paragraph (j)(I), this Court must note that certain guiding principles have been articulated by the Rhode Island Supreme Court in the recent and not-so-recent past. To begin with, this Court relies on the well-established principle that "the primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to law." Prince v. Roberts, 436 A.2d 1078, 1080 (R.I. 1980) (citing Lux v. Lux, 109 R.I. 592, 288 A.2d 701 (1972);Industrial National Bank v. Budlong, 106 R.I. 780, 264 A.2d 18 (1970);Prince v. Nugent, 93 R.I. 149, 172 A.2d 743 (1961)). The intention of the testator governs and is to be made effective if possible, if it can be accomplished fairly and without violating any unalterable rule of law.Church v. Church, 15 R.I. 138, 23 A. 302, (1885). In order to determine the intention of the testator, "the circumstances existing at the time of the execution of the will are to be considered by the court. In re Gee,44 R.I. 132, 115 A. 716 (1922). In construing the trust instrument, "words should be given their primary, ordinary, and common meaning unless it plainly appeared that they were used in some other sense." Prince, 436 A.2d at 1081.
Taking into consideration these guiding principles, this Court finds that a holding in the instant matter, requiring a per stirpes distribution would be in harmony with the prior decision by the Rhode Island Supreme Court in Roberts, as well as both Rhode Island General Law and the Restatement of Property. In construing paragraph (j)(I), the Roberts Court found that the trial justice was not erroneous in concluding that the "use of `per stirpes' revealed the intent of the settler that children of a living parent who is receiving (j)(I) income are not entitled to receive a share of income during the lifetime of their mother. . . . [T]his construction gives effect . . . to the Settlor's direction that the gift be per stirpes . . ." Id. at 1082. Accordingly, this Court finds that the intent of the Settlor was for a traditional per stirpes distribution to be required. Otherwise, either the Settlor in the trust instrument, or the Roberts Court in construing the trust instrument, would have articulated that notwithstanding the paragraph (j)(I) reference to per stirpes, that an alternative form of distribution was intended. In the absence of such language, this Court concludes that only a traditional per stirpes distribution could have been intended by the Settlor in paragraph (j)(I).
This Court also finds that by application of the holding in Bridgham,
as well as the subsequent codification in the form of R.I. Gen. Laws § 33-6-9, a per stirpes distribution is required and the division into per stirpes shares begins at the first generation below the designated person. In Bridgham, the language of the will referred a bequest of a gift "in fee simple, absolutely and forever, to my brother, Joseph Bridgham, and his issue." Bridgham, 42 R.I. at 162. Similarly, in the instant matter, the language at issue refers to a gift "per stirpes, to and among the female children and more remote female issue living." In construing the language in Bridgham, the court found that a traditional per stirpes distribution was required beginning with the first generation below Joseph. In the matter at hand, with Bridgham in mind, this Court finds that a traditional per stirpes distribution is required, beginning with the first generation of qualified female issue below William Henry Wood-Prince.
Finally, this Court concludes that a traditional per stirpes distribution is in line with the principles articulated in the Restatement 2d of Property. Section 28.2 of the Restatement describes how a gift should be distributed if made to a class described as the "issue" or "descendants" of a designated person, as in the instant matter. In this vein, the Restatement declares that such distribution shall be made into shares on the basis of the number of class members in the first generation below the designated person. Therefore, the holding of this Court, requiring that the distribution of the (j)(I) income be made into shares on the basis of the three children of William Henry Wood-Prince, until a qualified female issue could take the share, is in harmony with the mandates of the Restatement 2d of Property.
 Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, this Court finds that Paragraph (j), Subdivision I of Article II, Section I of the Prince 1932 Trust, and the language "per stirpes, to and among the female children and more remote female issue living" requires a traditional per stirpes distribution at the first generation below the designated persons. This will result in a per stirpes distribution to the female issue of the three children of William Henry Wood-Prince and a present distribution in the William Henry Wood-Prince family line of $75,000 to the female issue of William Norman Wood-Prince. Predicated upon the foregoing discussion, declaratory judgment shall enter construing the trust provision at issue consistent with the provisions hereof.
[1] Black's Law Dictionary defines the term "per stirpes" as "proportionally divided between beneficiaries according to their deceased ancestor's share. Black's Law Dictionary 1164 (7th ed. 1999).
[2] Barbara Eleanor Collins and Wendy Catherine Sherman, sisters, are granddaughters of William Henry Wood-Prince. Nell July Wood-Prince is a great-granddaughter of William Henry Wood-Prince.
[3] The complaint filed by the Trustees also requested this Court to appoint guardians ad litem to represent all said minor defendants and any persons not in being, not ascertained, or in the Armed Forces of the United States who are or may become entitled to any right, title, interest or estate in the Trust. On June 27, 2002, a Superior Court judge entered an order appointing a guardian ad litem for Nell July Wood-Prince. On November 18, 2002, a Superior Court judge entered an order appointing a guardian ad litem for Pearl Dryden Wood-Prince. On December 5, 2002, this Court entered an order appointing one guardian ad litem to represent William Owen Collins and Catherine Estelle Collins, minor children of Barbara Eleanor Wood Collins and the same guardian ad litem to represent Lucia Elise Steinwold, Andrew Edward Steinwold and Eleanor Jane Sherman, minor children of Wendy Catherine Sherman. The December 5, 2002 order also provided for the appointment of a different guardian ad litem for Isabella Helen Kiker, a minor child of Diana Oehrli. Finally, the December 5, 2002 order provided for the appointment of a different guardian ad litem to represent all persons not in being, not ascertained or in the Armed Forces of the United States who are or may become entitled to any right, title, interest or estate in the Trust.
[4] Prior to the birth of Nell July Wood-Prince on July 16, 2000, the $150,000 share for the female descendants of William Henry Wood-Prince was distributed equally between Barbara Eleanor Collins and Wendy Catherine Sherman (granddaughters of William Henry Wood-Prince). According to the decisions in Prince v. Nugent, 93 R.I. 149, 172 A.2d 743
(1961) and Prince v. Roberts, 436 A.2d 1078 (1981), construing paragraph (j)(I), Nell July Wood-Prince is entitled to an annual distribution. Since the birth of Pearl Dryden Wood-Prince in 2002, the annual income would be the same amount for each of the four female issue under either a per stirpes or per capita construction in 2002 and in every year thereafter assuming no other qualified issue are born. The Trustees are seeking answers as to distributions with respect to the years 2000 and 2001 because these are the two years during which Nell July Wood-Prince was living, but Pearl Dryden Wood-Prince was not. Therefore, the distribution to the three then-existing qualified issue would be different depending upon whether a per stirpes or a per capita construction is applied.